JS 44 (Rev. 3/99)             CIVIL COVER SHEET          APPENDIX B

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Hector Cruz

**DEFENDANTS**
City of Philadelphia, Police Officers John Doe Numbers 1 through 10, Badge Numbers Unknown

(b) County of Residence of First Listed Plaintiff  Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
L. Kenneth Chotiner, Esquire
1818 Market Street, Suite 3740
Philadelphia, PA  19103; 215-564-6544

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug |  | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  ☐ 365 Personal Injury — | ☐ 630 Liquor Laws |  | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending |  |  | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract |  ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury |  | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
|  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) |  |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |  |
| ☐ 240 Torts to Land |  ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights / ☐ 550 Civil Rights |  |  |  |
|  |  ☐ 555 Prison Condition |  |  |  |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. 1983, 1988, 28 U.S.C. 1331, 1343(1)(3)(4)

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $**   CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 719 W. Tioga Street, Philadelphia, PA

Address of Defendant: 1515 Arch Street, Philadelphia, PA

Place of Accident, Incident or Transaction: Philadelphia, PA
(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
(*Check Appropriate Category*)

I, L. Kenneth Chotiner, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 6/24/14   _____   77451
                Attorney-at-Law      Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____   _____   77451
                       Attorney-at-Law   Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Hector Cruz | : | CIVIL ACTION |
| v. | : | |
| City of Philadelphia, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x)

| 6/24/14 | [signature] | | Plaintiff |
|---|---|---|---|
| **Date** | **Attorney-at-law** | | **Attorney for** |
| 215-564-6544 | 215-383-0370 | | lkc@thechotinerfirm.com |
| **Telephone** | **FAX Number** | | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HECTOR CRUZ** <br> **Plaintiff** <br><br> Vs. <br><br> **THE CITY OF PHILADELPHIA,** <br><br> **AND** <br><br> **POLICE OFFICERS JOHN DOE NUMBERS 1 THROUGH TEN, BADGE NUMBERS UNKOWN** <br><br> **Defendants** | **CIVIL ACTION** <br><br> No.: 14-CV- <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

**I.   JURISDICTION**

1.   This action is brought pursuant to 42 U.S.C. Sections 1983 and 1988, 28 U.S.C. §§ 1331 and 1343(1),(3),(4) and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, the Pennsylvania Constitution, and under the Common Law of the Commonwealth of Pennsylvania. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

**II.   PARTIES**

2.   Plaintiff, Hector Cruz, is a resident and citizen of the Commonwealth of Pennsylvania, who resides at 1431 Somerset Ave., Philadelphia, Pennsylvania.

3.   Defendant, City of Philadelphia, is a City of the First Class in the Commonwealth of Pennsylvania and a municipal corporation duly existing and organized under the laws of Pennsylvania with offices for service at 1515 Arch Street, Philadelphia,

PA 19102. At all times relevant hereto, Defendant, City of Philadelphia, operated under the color of state law in creating and maintaining a Police Department and was the employer of all of the Police Officer Defendants in this action.

4. Defendants, John Doe, Number One through Ten, are factitious names of individuals heretofore unascertained that were at all times relevant to this Complaint, Police Officers for the City of Philadelphia and acted under the color of state law. They are being sued in both their individual and official capacities.

5. At all times material and relevant to this complaint, Defendant, City of Philadelphia, did act through its agents, employees, owners, representative, agents and/or employees while in the course and scope of their employment and/or agency.

6. At all times referred to herein, Defendants, acted under color of the laws, statutes ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania, the City of Philadelphia and the Police Department of the City of Philadelphia, and pursuant to their authority as police officers of the City of Philadelphia and its police department.

### III.   FACTS

7. On or about July 10, 2012, at approximately 10:00 p.m., Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, brought plaintiff, who they had placed in handcuffs, to Temple University Hospital—Episcopal Campus. (According to the medical records, Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, were operating car number 24.)

8.  Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, removed the cuffs because, according to hospital records, plaintiff was "not a prisoner. Then defendants left plaintiff at the hospital.

9.  Plaintiff presented to the hospital complaining of abrasions to his face, forehead and right cheek, and right elbow. He was also diagnosed with fractures to his left later sixth, and possibly, seventh ribs.

10. Plaintiff followed up the emergency room treatment, and was diagnosed with a cervical spine strain & sprain with dysfunction, disc herniation C3-4, C4-5 and C5-6, which were confirmed by MRI. He also suffered from: 1) Thoracic spine strain and sprain with dysfunction; 2) Lumbar spine strain and sprain with dysfunction; 3) L4-5 and L5-S1 posterior annual tear and central disc herniation; 4) Right hip strain and sprain with dysfunction; and, 5) Right ankle strain and sprain with dysfunction.

11. All of the aforementioned injuries were caused by Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, and/or JOHN DOES (3-10), who tazed, assaulted, and battered, plaintiff for no reason on July 10, 2014, before they hand cuffed and falsely imprisoned him and brought him to the hospital.

12. Before Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, and/or JOHN DOES (3-10), assaulted and battered plaintiff, he was in a parking lot near the intersection of Frankford and heard Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, and/or JOHN DOES (3-10), talking and walked towards them to see what was going on.

13. Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, and/or JOHN DOES (3-10),told him he was not supposed to be in the area.

14. Plaintiff went to retrieve his bag and, when he turned around, Defendants, Philadelphia Police Officers John Doe Nos. 1 and/or 2, and/or JOHN DOES (3-10), tazed him.

15. Plaintiff screamed out in pain and fell to the ground.

16. Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, and/or JOHN DOES (3-10), continued the assault and battery as they dragged plaintiff towards Frankford Ave., where they placed him in cuffs and then into a patrol vehicle.

17. Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, and/or JOHN DOES (3-10), questioned plaintiff and then took him to the hospital.

18. Plaintiff was not charged with any crime.

19. The aforesaid assault, battery and unlawful imprisonment, use of excessive force, restrictions of freedom to move, and the physical and psychological abuse inflicted upon the plaintiff by Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, and/or JOHN DOES (3-10), in the arrest and as a result of his being held in custody were carried out unlawfully, maliciously and intentionally.

20. As a direct and proximate result of the intentional, unlawful, reckless and malicious acts described above, all committed by Defendants, Philadelphia Police Officers John Doe Nos. 1 and 2, and/or JOHN DOES (3-10), under color of law, under his/their authority as City of Philadelphia Police Officers, while acting in the course and scope of their employment and pursuant to authority vested in them by City of Philadelphia, Defendants caused plaintiff herein to sustain serious and painful injuries to his body, and to suffer serious mental anguish and economic damages, some or all of which injuries and damages may continue indefinitely into the future.

## FIRST CAUSE OF ACTION
## EXCESSIVE USE OF FORCE BY DEFENDANTS
## COGNIZABLE UNDER 42 U.S.C. §1983

21. The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

22. At the time and date aforementioned, Defendants used unnecessary force on plaintiff by tazing him, dragging him, striking him, beating him, and handcuffing him. Defendants' actions were unnecessary, unlawful, outrageous and intentional, and constituted an unlawful physical assault upon plaintiff.

23. At no time did plaintiff offer or commit any violence against defendants.

24. As a direct and proximate result of the aforesaid unlawful and malicious physical abuse of plaintiff by defendants, committed under color of law and under each individual defendant's authority as a police officer of the City of Philadelphia, plaintiff suffered harm and was deprived of his right to secure his person against unreasonable seizure of his person, and the excessive use of force violated his Fourth and Fourteenth Amendment Constitutional rights.

25. As a direct and proximate result of the malicious and outrageous conduct of Defendants, plaintiff suffered physical injuries, as well as psychological and emotional injuries, some or all of which may be permanent.

26. The acts of Defendants as aforesaid were wanton, malicious and oppressive, thus entitling plaintiff to an award of punitive damages against the defendants in their individual capacities.

**WHEREFORE,** plaintiff respectfully requests judgment in his favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys

fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

### SECOND CAUSE OF ACTION
### FALSE ARREST AND IMPRISONMENT BY DEFENDANTS
### COGNIZABLE UNDER 42 U.S.C. §1983

27. The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

28. The conduct of defendants resulted in plaintiff being falsely, maliciously, and unlawfully arrested, and detained, and plaintiff was deprived of his rights as secured by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

**WHEREFORE**, plaintiff respectfully requests judgment in his favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

### THIRD CAUSE OF ACTION
### STATE LAW CLAIM FOR ASSAULT AND BATTERY AGAINST ALL DEFENDANTS

29. The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

30. Defendants assaulted and battered plaintiff as aforesaid.

31. As a direct and proximate result of this assault and batter, plaintiff suffered damages as aforementioned throughout this complaint.

**WHEREFORE**, plaintiff respectfully requests judgment in his favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys

fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

### FOURTH CAUSE OF ACTION
### STATE LAW CLAIM FOR ASSAULT AND BATTERY AGAINST ALL DEFENDANTS

32. The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

33. Defendants illegally arrested and imprisoned plaintiff in regard to the incident of July 10, 2012.

34. As a direct and proximate result of this false arrest and illegal imprisonment, plaintiff suffered damages as aforesaid.

**WHEREFORE**, plaintiff respectfully requests judgment in his favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

### FIFTH CAUSE OF ACTION
### 42 U.S.C. SECTION 1983 AGAINST THE CITY OF PHILADELPHIA FOR ITS FAILURE TO INVESTIGATE, TRAIN, SUPERVISE, AND/OR DISCIPLINE

35. The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

36. Prior to July 10, 2012, the City of Philadelphia, including but not limited to the City of Philadelphia Police Department, developed and maintained policies or customs exhibiting deliberate indifference to the constitution rights of persons in Philadelphia, which caused the violations of plaintiff's civil rights.

37. It was the policy and/or custom of the City of Philadelphia, by and through its Police Department to inadequately and improperly investigate acts of misconduct by its officers, including defendant officer(s), such that these acts of misconduct were

tolerated and known by the City of Philadelphia, including the incident involving plaintiff in this matter.

38. It was the policy and/or custom of the City of Philadelphia and its Police Department to inadequately supervise and train its police officers, including the defendant officer(s), thereby failing to adequately discourage further constitutional violations on the part of it police officers. The City of Philadelphia, by and through it Police Department, did not require appropriate in-service training or re-training of officer(s) who were known to have engaged in propensities for violence, unlawful arrests, unlawful detainments and unlawful behavior and further police misconduct.

39. In fact, by Memorandum (09-01), dated January 28, 2009, the Philadelphia Police Department, by and through Commissioner Charles H. Ramsey, implemented a written policy that directs all Platoon commanders to review and initial all arrest and investigative reports… to ensure that only those officers/investigators who are *necessary for the successful outcome of the case are listed."* **See Exhibit "A," Section III. A. 1., a true and correct copy of Memorandum (09-01) (emphasis added).** In other words, Platoon commanders must remove the names of any officers/investigators that would be helpful to a defendant.

40. As if the term "successful outcome" was not clear enough for the rank and file, the Standard Operating Procedure, which implemented Memorandum (09-01) states that "[a]ll Investigative Supervisors will be required to review and initial all investigative reports… and only those officers *necessary for prosecution* will be subpoenaed to court." **See Exhibit "B," Section III. D., a true and correct copy of Standard Operating Procedure for Memorandum (09-01) (emphasis added).**

41. As a result of the above described policies and customs, police officers of the City of Philadelphia and its Police Department, including the defendant officer(s), believed that his/their actions would not be properly monitored by supervisor officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

42. The above described policies and customs, police officers of the City of Philadelphia, by and through its Police Department, demonstrated an indifference on the part of policymakers of the City of Philadelphia and its Police Department to the constitutional right of person within the City of Philadelphia, and were the cause of the violations of plaintiff's rights alleged herein.

43. The acts and failures to act of Defendant, City of Philadelphia, by and through its Police Department, committed under color of law. As herein above set forth, deprived plaintiff of his rights, privileges and immunities guaranteed to him as a citizen of the United States, in violation of 42 U.S.C. Sections 1981, 1983, 1985, 1986 and 1988, and deprived the plaintiff of rights guaranteed to him by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and the Pennsylvania Constitution.

**WHEREFORE**, plaintiff respectfully requests judgment in his favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

## SIXTH CAUSE OF ACTION
## STATE LAW CLAIM FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST INDIVIDUAL DEFENDANTS

44. The allegations set forth in the foregoing paragraphs are incorporated herein as if fully set forth.

45. The allegations set forth in paragraphs one through fifty inclusive, are incorporated herein as if fully set forth.

46. The unlawful actions of defendants were intentional and/or reckless, constituting extreme and outrageous conduct which caused plaintiff to suffer severe and foreseeable emotional and physical injuries to his person.

47. Plaintiff re-alleges the damages as previously set forth.

**WHEREFORE**, plaintiff respectfully requests judgment in his favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

## JURY DEMAND

48. Plaintiff demands a jury trial as to each Defendant and as to each count.

THE CHOTINER FIRM

Dated: 6/24/14

L. KENNETH CHOTINER, LL.M.
Counsel for Plaintiff
1818 Market Street, Suite 3740
Philadelphia, PA 19103
215.564.6544



# PHILADELPHIA POLICE DEPARTMENT

**MEMORANDUM (09-01)**

(01-28-09)

**SUBJECT: OVERTIME MANAGEMENT**

---

## I. POLICY

A. Managing overtime costs are an essential element of supervisory and management responsibilities. The underlying goal of these procedures is to use overtime only when necessary; not to impede legitimate policing and investigative work. The following measures for all personnel in the Philadelphia Police Department (PPD) shall be implemented immediately. The purpose of these Department-wide procedures is to achieve uniformity in performance of our public service mission and to provide consistency in determining the need, use, distribution and management of overtime usage and in accordance with Directive 99 – "Overtime Pay and Compensatory Time" and Directive 13 – "Court Notices and Subpoenas."

---

## II. PROCEDURES FOR NON-COURT OVERTIME

A. Following the end of each pay period, the Administrative Service Bureau shall provide an overtime monitoring report to each unit detailing the use of overtime by type. A department summary will be provided to the Police Commissioner.

B. The responsibilities set forth below outline general guidelines and procedures applicable to all police personnel receiving non-court overtime compensation, including but not limited to arrest, investigative and administrative overtime. These guidelines and procedures do not pertain to overtime used for special events or federally-funded task forces, unless otherwise ordered.

C. Staffing should be planned so that most cases require only essential overtime. When significant and recurring overtime is required, other alternatives should be considered such as redistribution of workload, postponement of the work, or the use of temporary help. Overtime pay should not be used as a means to provide supplemental pay to an employee.

D. Personnel members on less than full-duty status are not normally eligible for non-court overtime compensation. Exceptions may be requested through the chain of command for approval by the Deputy Commissioner for Organizational Support Services.

- 1 -



E. Commanders/Managers shall be responsible for approving non-court overtime for employees within their respective unit, division or bureau. Approval may only be delegated in the manner listed below.

1. The Commanding Officer/Manager may give discretion to Platoon Commanders to approve discretionary overtime for two (2) hours.

2. The Commanding Officer must approve all overtime greater than two (2) hours and up to six (6) hours.

3. The Divisional Commanders (Inspector) must approve all discretionary overtime greater than six (6) hours.

F. Commanders/Managers shall approve all overtime assignments prior to overtime being worked by police personnel. Advance authorization is required for overtime usage, unless exigent public safety and/or emergency conditions exist which necessitate approval after overtime usage has occurred.

G. The Request to Work Non-Court Overtime Form (75-57) shall be available to all employees within each unit, and be completed by the employee working overtime.

1. Upon written approval (signature) by the respective Commanders, or designee as outlined above, for each unit, the Request to Work Non-Court Overtime Form (75-57) shall be attached to the Daily Attendance Record (DAR).

2. Commanding Officers will collect, maintain and store all Overtime Authorization Forms in a manner consistent with the retention of the DARs as defined in Directive 115 – "Records Retention and Disposition Protocol."

H. Commanders/Managers shall be provided with a report at the end of each pay period for the purposes of monitoring and reviewing the use of overtime. Corrective action shall be taken as appropriate to ensure the appropriate use of overtime. This is an essential managerial task, and must be done in conjunction with the approval process for all employees within each respective unit.

## III. PROCEDURES FOR COURT OVERTIME

A. Commanders/Managers shall also be responsible for reviewing and monitoring all court overtime for all employees in their respective units.

1. Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.

B. This department-wide procedure sets the minimum requirements that all members must follow. Since the functions and responsibilities vary within each unit of the Philadelphia Police Department, bureaus may establish additional standard operating procedures (SOP). Such procedures shall not override the requirements stated here. All such SOPs shall be forwarded to the newly created Division of Standards and Accountability.

C. Unit commanders shall be responsible for the following:

   1. Approving overtime requests in accordance with the procedures outlined in this memorandum.

   2. Tracking the use of overtime by assigned personnel.

   3. Reviewing and monitoring all overtime usage for their respective unit on a monthly basis.

D. The Division of Standards and Accountability, under the Office of Operational Coordination and Accountability shall be charged with the following:

   1. Monitoring, analyzing and ensuring compliance with appropriate overtime usage protocols.

   2. Reviewing all unit-generated procedures on overtime management and providing corrective feedback to ensure compliance with this document.

   3. Identifying, analyzing and determining the appropriateness of individuals earning large amounts of overtime.

   4. Attend monthly COMPSTAT sessions for issues concerning overtime usage.

E. Overtime abuses or failures to comply with the above standard operating procedures shall be subject to disciplinary action.

---

**CHARLES H. RAMSEY**
Commissioner

---

| FOOTNOTE # | GENERAL # | DATE SENT | REVISION |
|---|---|---|---|
| *1 | 5671 (bt)  5672 (al) | 01-30-09 | Phone Number Change |

Philadelphia Police Department
*Standard Operating Procedure*
Overtime Management & Reduction

## I. SCOPE

A. The following measures for Field Operations Bureau Personnel shall be implemented immediately in order to meet the fiscal demands of the City of Philadelphia. The purpose of this Department-wide standard operating procedure (SOP) is to achieve uniformity in performance of our public service mission and to provide consistency in determining the need, use, distribution and management of overtime usage.

B. In addition to Directive # 13 - Court Notices and Subpoenas and Memorandum 09-01- Overtime Management, personnel will adhere to the roles and responsibilities contained in this Standard Operating Procedure.

## II. ROLES AND RESPONSIBILITIES

A. Commanders/Managers shall be responsible for approving **Non-Court Overtime** assignments for employees within their respective unit, bureau or division.

  1. Commanders/Managers shall be responsible for ensuring that overtime usage is being used appropriately and effectively, and that all employees in their respective units are complying with the following standard operating procedure.

B. Commanders/Managers shall approve all overtime assignments **prior to** overtime being worked by PPD personnel. **Advance authorization** is required for overtime usage, unless exigent public safety and/or emergency conditions exist which necessitate approval after overtime usage has occurred.

C. The following approvals shall be required for all overtime usage:

  1. Commanding Officers shall approve all overtime for investigative personnel.

     a. The Commanding Officer may give discretion to Platoon Commanders to approve investigative overtime for two (2) hours provided that the investigation does not involve more than two officers.

     b. The Commanding Officer must approve all overtime greater than two (2) hours and up to six (6) hours, as well as situations that arise where more than two officers are needed on a particular case.

     c. The Divisional Commanders (Inspector) must approve all investigative overtime **greater** than six (6) hours. There is no exception to these procedures and approval cannot be delegated to supervisory personnel.

D. The **Overtime Authorization Form (75-57)** shall be issued to all employees within each unit, and be completed by the employee requesting overtime.

## III. FIELD OPERATIONS: PATROL, NARCOTICS AND INVESTIGATIVE UNITS PROCEDURES AND GUIDELINES

A. All Court Notices, especially Preliminary Hearings, will be reviewed by supervisory personnel to determine whether the Officers appearance is necessary. All supervisors will be alert to the

EXHIBIT "B"

number of Officers/Investigators subpoenaed for a particular case, and be aware of the number of consecutive days an investigator has been subpoenaed.

In those cases where more than <u>three (3) officers/investigators</u> are subpoenaed for court on the same case, an immediate review of all investigative reports will be initiated by the Commanding Officer and take action when warranted. As stated in Memorandum 09-01 Overtime Management III-D-2, whenever there are six (6) or more personnel subpoenaed on the same case, the supervisor will contact the overtime management unit to refer the case for their review.

B. As per Memorandum 09-01 Overtime Management, when personnel are subpoenaed for court on a scheduled day off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the Officer's appearance. If it appears that the Officer/Investigator is unnecessary, the supervisor shall contact the Overtime Management Unit to refer the case for their review.

C. Supervisors will not attend court without the approval of the Commanding Officer. [handwritten: Can not Do -] Supervisors will ensure they are directing the investigation and not placing themselves in a position that will require their testimony at a later date. It is critical that supervisors fully understand their role, and on those rare occasions when they are needed for court, Commanding Officers' approval will be necessary.

D. All investigative Supervisors will be required to review and initial all investigative reports, including PARS reports, and only those officers necessary for prosecution will be subpoenaed to court, as outlined in our departmental policies. <u>**All PARS arrest reports must be reviewed and/approved by a Supervisor within ten (10) hours upon completion of the PARS Arrest Report**</u>

E. The <u>assigned supervisor</u> maintains the overall responsibility for the number of police personnel involved in <u>case management</u>. When feasible, the lead investigator, or co-investigator, will assume responsibility for handing multiple components of each case, including collecting physical evidence, writing property receipts, taking statements, and assuming the role of affiant on the search or arrest warrant. The narrative description included on all search or arrest warrants should match these assigned roles and responsibilities.

i. Investigative supervisors shall review search and arrest warrants to ensure that the above practices are followed, and that each component of case management is handled by as few police personnel as possible, as needed for the successful prosecution of the case.

ii. The assigned investigator or controlling officer will be responsible for conducting the necessary surveillance related to his/her investigation.

iii. The assigned investigator will be responsible for preparing all search warrant(s) and/or arrest warrant(s) during a single investigation. Additionally, when feasible, if the investigation necessitates serving search warrants at multiple locations, the assigned investigator will be the affiant on each search warrant. The type and complexity of the investigations controls the number of officers directly involved in subsequent prosecution of the accused. In most cases, the affiant (assigned investigator) should obtain all search and seizure warrants, seize incriminating evidence/fruits of the crime, and prepare necessary property receipts.

iv. The assigned officer/investigator should also be the confiscating officer and prepare necessary property receipts. During the execution of search and seizure warrants, all evidence will be seized by the confiscating officer. Officers participating in the search will not take custody of the evidence, but merely point out to the confiscating officer the location of the found evidence. The confiscating officer will take possession of the evidence and record on a property receipt. Officers will at all times follow proper chain of custody procedures.

v. In most cases the assigned investigator should be responsible for the interview and interrogation of the accused. Formal statements taken from defendants should be limited to the lead investigator or his/her partner.

vi. The assigned investigator will be responsible for conducting all field tests related to their investigations.

vii. The assigned investigator will be responsible for preparing all property receipts (75-3) associated with an investigation. All provisions of Police Directive #91 Property Receipts will be strictly followed.

viii. Supervisors will no longer be listed on the PARS 75-49 as recording or reviewing the departmental "buy" money. This information will instead be listed on the squads sending and receiving sheet. Controlled "buys" made by confidential informants will be witnessed by the lead investigator and/or co-investigator.

ix. The District Attorney's Office during some cases may also subpoena the officer/investigator for testimony relative to the "Report of Field Tester Affidavit" for a preliminary hearing. This is an unnecessary court notice, and the investigative supervisor shall contact the District Attorney's Office directly, and notify him/her that the affidavit serves as a sufficient basis to proceed in a preliminary hearing, without the direct testimony of the field test officer/investigator.

## V. FINAL AUTHORITY AND INTERPRETATION

A. Overtime abuses or failures to comply with the above standard operating procedures may be subject to disciplinary action.

## VERIFICATION

Hector Cruz, hereby states that she is the plaintiff herein and says the facts set forth in the foregoing pleading are true and correct to the best of his knowledge, information and belief; and that this statement is made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsifications to authorities.

_____
Hector Cruz

Date: 6-24-14